### State ex rel. Figley v. George W. Conser.

**1. Quo Warranto Lies to Contest Election of Township Officers.**

Section 21, Art. 2, of the constitution, which provides that the general assembly shall determine by law, before what authority and in what manner the trial of contested elections shall be conducted, does not of itself, in the absence of any statute passed under its authority, change the mode of proceeding in such cases, and *quo warranto*, which was the proper proceeding before the adoption of the constitution, is still such, unless superseded by statute. Hence, there being no provision in the statute for the contest of the election of township officers, *quo warranto* is the proper proceeding to determine the validity of the election of a township trustee.

**2. Action of Judges of Township Elections not Conclusive.**

The purpose of the Australian ballot law, Sec. 2966-13 Rev. Stat. *et seq.*, is to secure an elector the exercise of that inherent and invaluable right of the elective franchise, and protect him from the fraud, mistake or misapprehension of the judges of election. Hence, the action of the judges of a township election in rejecting and destroying ballots is not final and conclusive, but may be reviewed in a proceeding to contest such election.

**3. Right to Contest an Election—Mere Inference of Statute will not Deprive.**

The right to contest an election for fraud or mistake has always been held an invaluable one as a matter of public policy, and a statute will not be construed as repealing or abridging this privilege unless such an intention is clearly expressed. It certainly cannot be done by mere inference.

**4. Parol Evidence of Contents of Ballot Competent in Election Contest.**

The rule that where the best evidence has been destroyed, or it is impossible to produce it in court, the next best may be resorted to, applies to ballots cast at a township election, and the contents of ballots rejected and destroyed by the judges at such an election may be proved by parol.

**5. Writing in Name of Candidate Under and Partly Over Another Candidate's Name Erased, Requires Counting.**

Under Sec. 2966-35 Rev. Stat., which declares that "no ballot shall be rejected for any technical error which does not make it impossible to determine the voter's choice," a ballot upon which a black pencil line is drawn through the name of a candidate and the name of an opposing candidate written near to and partly over it, must be counted for the latter candidate, although no cross-mark appears opposite the name of the latter.

**6. Candidate not Estopped to Contest Election—When.**

A candidate for office at a township election, who is present when the ballots are counted and makes no objection to the rejection of certain ballots, which, if counted for him, would cause his election, and declares himself satisfied with the result of the election, is not thereby estopped to contest the election.

**7. Writing in Name in Blank Space for Designated Office, Valid.**

An Australian ballot upon which there is a ticket containing no names of candidates, blanks being left under the printed designation of each office, becomes a valid ballot for a person for any office when his name is written in the blank beneath the designation of that office.

**8. WRITING NAME WITH BLUE PENCIL DOES NOT DEFEAT BALLOT.**

Although Sec. 2966-35 Rev. Stat. provides that "all marks upon the ballot must be made by a black lead pencil," a ballot containing a candidate's name in blue pencil will be counted for such candidate, whether contestant expressly consents that it may be.

QUO WARRANTO.

George W. Conser was declared elected to the office of trustee in Hanover township by a majority of one in the spring of 1902. George Figley, his competitor for the office, had five votes which the judges refused to count. He commenced a contest proceeding in the nature of a quo warranto.

**W. G. Wells,** for plaintiff, cited:

Construction of Secs. 1, 6 and 21 of the constitution. State v. Marlow, 15 Ohio St. 114, 133.

When no specified mode of contest is given *quo warranto* applies. State v. Marlow, 15 Ohio St. 114; State v. Harmon, 31 Ohio St. 250; State v. O'Brien, 47 Ohio St. 464 [25 N. E. Rep. 121]; State v. McLain, 58 Ohio St. 313 [50 N. E. Rep. 907]; State v. Water Co., 3 Circ. Dec. 30 (5 R. 58); State v. Funk, 8 Circ. Dec. 782 (16 R. 155).

Ordinarily the mistake of the officers of election or the canvassers may be corrected, and proof is admissible to show such mistake. 10 Am. & Eng. Enc. Law (2 ed.) 840; Sinks v. Reese, 19 Ohio St. 306 [2 Am. Rep. 397]; Howard v. Shields, 16 Ohio St. 184; Phelps v. Schroder, 26 Ohio St. 550; State v. Luy, 79 N. W. Rep. 776 [103 Wis. 524]; State v. Pierce, 35 Wis. 93; Davis v. Harper, 42 S. W. Rep. 788 [17 Tex. Civ. App. 88]; Dixon v. Orr, 4 S. W. Rep. 774 [49 Ark. 238; 4 Am. St. Rep. 42]; Young v. Deming, 33 Pac. Rep. 818 [9 Utah 204]; Spidle v. McCracken, 25 Pac. Rep. 897 [45 Kan. 356].

**W. S. Potts,** for plaintiff, cited:

Legislative intent in the Australian ballot law. **State v. Tanzey,** 49 Ohio St. 656, 661 [32 N. E. Rep. 750].

**J. A. Martin,** for defendant, cited:

Admissibility of parol evidence as to form of ballots cast at election, etc. State v. Tanzey, 49 Ohio St. 656, 657 [32 N. E. Rep. 750]; Oakes v. Finlay, 53 Pac. Rep. 173, 176 (Ariz.); Pusch v. Brady, 53 Pac. Rep. 176, 177; Anderson v. Likens, 47 S. W. Rep. 867 [20 Ky. Law 1001]; Daniel v. Simms, 39 S. E. Rep. 690 [49 W. Va. 554]; Weakley v. Wolf, 47 N. E. Rep. 466 [148 Ind. 208]; Chamberlin v. Wood, 88 N. W. Rep. 109 (S. Dak.); 6 Am. & Eng. Enc. Law (1 ed.) 389, art. 7; cases cited by court in Oakes v. Finlay, *supra.*

**LAUBIE, J.** (Orally.)

This is a proceeding in quo warranto, brought to contest the election of the defendant, Conser, as township trustee of Hanover township, in this county.

It seems that at the election in question there were three tickets on the ballot, known as the Australian ballot. There was a republican ticket, a democratic ticket and a citizens' ticket, each so headed, and each printed in conformity with the laws of the state in reference to the Australian ballot. Conser was candidate for township trustee on the republican ticket, Figley on the democratic ticket, and their names, in accordance with the statute, were printed thereon as candidates, but on the citizens' ticket there was no candidate's name for that office printed on the ticket, or any township office; but in accordance with the statute, sufficient blanks were left under the printed designation of each office, so that the voters might write the name of such candidates as they desired to vote for.

In this case, according to the count as made by the board, Conser received one vote more than Figley, and they declared Conser elected. There were five or six ballots rejected, and without any dispute between the judges; and these ballots, with the others, were burned in accordance with the provisions of the statute in that regard.

It is claimed upon the part of the defendant that this proceeding in quo warranto cannot be maintained; that quo warranto will not lie and is not a proper proceeding to determine the validity of the election of a township officer. Reference is made to the constitution of the state, and to decisions of the Supreme Court in regard thereto as to the manner of contesting elections. The constitutional provision (Sec. 21, Art. 2) is that the legislature shall provide for the contest of elections; but the legislature has not done so in regard to the election of township officers. So that there is no statute of the state which provides, or attempts to provide for a contest of election of township officers. That being the case, we are at a loss to know why this ancient proceeding in quo warranto cannot be brought. It is one which is authorized by the constitution of the state (Secs. 2 and 6, Art. 4), and may be brought, theretofore, in any case where it might have been brought, unless restrained by some other provision of the constitution. Prior to the adoption of the present constitution it was a proper proceeding to contest the election of officers of the state, and the Supreme Court has held that it is so now, except as modified by the provision of the constitution that the legislature shall provide for proceedings to contest the election of officers of the state. But where the legislature has not

done so, does that deprive the courts of jurisdiction in quo warranto in such cases?

In the case of State v. McLain, 58 Ohio St. 313, 322 [50 N. E. Rep. 907], this is said by the eminent judge delivering the opinion:

" It is argued, however, in behalf of the state, that quo warranto is the appropriate action for the trial of title to an office; and that by Sec. 2, Art. 4, of the constitution, original jurisdiction in such actions is conferred on this court, of which it cannot be deprived, in any degree, by legislation. But that provision of the constitution should be construed with others *in pari materia*, and each so restrained as to give harmonious effect to them all. And hence, the jurisdiction conferred by that section is subject to such legislative control as is authorized by other provisions of the same instrument; and legislation enacted in obedience to such provisions has the same effect as if contained in the constitution itself. In instance of this, by Sec. 21, Art. 2, power is conferred on the general assembly to provide by law ' before what authority, and in what manner the trial of contested elections shall be conducted;' and a statute enacted in the exercise of that power was held, in State v. Marlow, 15 Ohio St. 114, to afford the exclusive remedy in such cases, and withdraw them from the jurisdiction of this court in quo warranto, nothwithstanding the latter mode of inquiry, in the absence of such a statute, was the appropriate one in such cases."

That is, reference is made to the case of State v. Marlow, 15 Ohio St. 114, upon the question, as establishing the rule that in the absence of such a statute, quo warranto is the appropriate remedy in such cases.

So we pass this matter by with the conclusion that this proceeding is properly brought, as there is no statute providing for contest of election of a township officer or township trustee.

As I have stated, the board in this instance declared the vote in favor of Conser, the republican candidate, by a majority of one; and as to the ballots that were rejected, as there was no dispute about them, or difference in the minds of the judges, they were burned.

It is claimed on the part of the defendant, Conser, that the action of the judges was final and conclusive, and made so by the provision of the Australian ballot law itself. If this were so, it would be a singular election law; not only a singular one, but an outrageous one, to undertake in such a manner, to defraud, substantially, the electors of a township by the fraud, mistake or misapprehension of the judges of the election. One of the inherent and invaluable rights of a citizen of this country is the elective franchise, and the Australian ballot law (Secs. 2966-13 Rev. Stat. *et seq.*) was passed especially to protect him in it, so that by no fraud or mistake on the part of the judges of the election, or of politicians and

partisans running it, could his privilege be destroyed by taking away from him his vote, or not counting it after it was voted. If the ballot of one citizen may be rejected by fraud or mistake, and beyond his power to question it, it may be done as to all. And in this case the proposition is well stated, that if a candidate was declared elected by a majority of one vote, while there were four or five votes uncounted that should have been counted for his opponent, then the majority of the electors in that township were defrauded of their rights, and the judges of the election usurped their power and their right of the elective franchise and took it away from them, and conferred the office upon the man whom the majority voted against. And it is claimed that by inference—not by any direct language in the Australian ballot law, but by a mere inference—that this precious right may be invaded, and the majority of the electors of a township, county or the state (because if it applies to one it applies to all) may thus be defeated of their intention and of their rights in an election of officers of such township, county or state by the judges through fraud or mistake.

The English language is not so devoid of words that if the legislature intended to destroy the right of contesting an election in such a case, it could not have expressed it, and the legislature has not expressed it in direct language. Such result is claimed only by inference from the language used; that, as there was no dispute over the rejected ballots, or differences in the minds of the judges as to them, the burning of such ballots ended the matter; that the legislature having directed that such ballots should be burned, the inference must be that the legislature intended that the action of the judges in their rejection should be final and conclusive. If the legislature so intended, it had the words at command to express that intention, and would have done so, and not left such new and important provision to mere inference.

The right to contest an election gained by fraud or mistake is one that has been always held in this state as an invaluable one as a matter of public policy, and if the legislature intended to repeal that inestimable privilege and to establish another and a different rule, the English language is broad enough to have enabled it to express that intention beyond any question or dispute. The legislature has not done so, and its failure to do so in express terms has convinced us that the legislature did not have any such intention.

Another proposition of defendant's counsel is that parol evidence is not competent in this case to prove the contents of these rejected and destroyed ballots. In cases of this kind, it has always been held that where the ballots are destroyed, or where it is impossible to produce them in court, the next best evidence is competent; following the gen-

State v. Conser.

eral rule that where the best evidence is unattainable, the next best may be resorted to. The ballots were destroyed, and admitted to be so, and hence could not be produced, and the universal rule must prevail, that parol evidence may be admitted of their contents.

The question, therefore, is, should these ballots be counted to ascertain whether or not the board of elections had arrived at a correct result in the determination of the poll? I have already said that there were two candidates for this office—two party candidates—Conser on the republican ticket, Figley on the democratic ticket.

The Australian ballot law, Sec. 2966-19 Rev. Stat., provides that the name of any candidate cannot go upon the ballot twice. If there are two parties that wish to nominate the same individual for the same office, they may do so, but his name cannot go upon the ballot on the ticket of each. It can only go upon the ballot under the head of one ticket. And so on this citizens' ticket neither Conser's name nor Figley's name could be printed, and was not. But on this citizens' ticket there was a blank space under the printed words, "township trustee," so that the citizens of the village of Hanover might write the name of Conser or Figley upon the ticket if they wished to vote for either for township trustee.

It is admitted on the part of the state that there was one ballot rejected by the board of elections that should have been counted for Conser. His name was written on the ballot in blue pencil, contrary to the provision of the statute that it should be in black, but it is conceded on the part of the state that that vote ought to have been, and may be counted for Conser.

On the other hand, there were two ballots that were cast on the republican ticket which, it is claimed upon the part of the state, should have been counted for Figley, and were not. The evidence shows conclusively that whoever voted those tickets intended to vote for Figley for township trustee. It shows conclusively that the voter first erased Conser's name by drawing a black pencil line through it, and then wrote the name George Figley below it. The judges concede that they rejected it because the upper part of the capital letters G and F in Figley's name ran up above the blank over the printed name of Conser. And partly from the whole evidence it appears it was only because of that fact that they rejected those two ballots. It is almost impossible to believe that a voter who ran pencil lines across the name of the printed candidate, and beneath his name, or over it, if you please, wrote the name of the opposing candidate, did not intend to vote for that opposing candidate. And we think that those two tickets should be counted for Figley irrespective, too, of the question whether there was a cross-mark made in front of Figley's name on the tickets or not.

The statute provides that the elector may write in the name of any candidate he favors, and he may write it either in a blank space, where there is no candidate's name, or over the name of the ticket's candidate. And the latter part of Sec. 2966–35 Rev. Stat. declares that no elector's vote shall be rejected unless it is impossible to determine who he intended to vote for. So that where he writes the name of his candidate in its proper place, who would say that the elector did not intend to vote for the individual whose name he wrote in under the proper designation of the office, whether he put the cross mark to the left of it or not. Would it be impossible, in such a case, to determine who he intended to vote for?

In regard to the citizens' tickets, it is claimed that there were three of those where Figley's name was written in under the appropriate printed head of township trustee, indicating that the voter intended to vote for him. While there is some conflict as to the number, there is no dispute that there were two at least of these where Figley's name was written in its proper place, showing that the electors intended to vote for George Figley for township trustee.. And the judges of the election honestly made a mistake in rejecting these ballots. In fact, the majority of them come here as witnesses and admit that they did make a mistake. They were honest in their action, but that does not affect the right of the elector to have his vote properly counted; and we think, therefore, that these four votes for Figley were erroneously rejected, which would give Mr. Figley a majority of two votes.

It is claimed further that Figley cannot take advantage of this error, that he is estopped because he was present and made no objection to the rejection of these votes, and declared that he was satisfied with the result, and had run better than he expected. That he made no such objection and was honestly mistaken, as we think the judges were, as to the legality of the rejection of those ballots, than the mistake of the judges would no more bar this proceeding when he discovers the true state of affairs. When he finds out the true state of affairs, what rule of law is there that would estop him from attempting to secure his rights? Certainly this is not a case of estoppel. In this proceeding there was a mistake on the part of the judges, and Figley must be declared elected, and the relief is granted as prayed for by this relator.

A decree may be taken accordingly.